## Noble *versus* James.

1. As a *general rule*, where a contract is entire, it is incumbent on the plaintiff to show a performance of all that was stipulated on his part, to be performed, and on failure so to do, he is not entitled to recover anything.

2. Where there has been a substantial and *bona fide* compliance, on the part of the plaintiff, with his contract, he shall not be precluded from a recovery of his compensation, on account of some slight imperfection, for which the defendant may be compensated in damages.

3. The acceptance of wheat, purchased under a gross contract, and the delivery of separate receipts for each load, specifying the number of bushels, in connection with the declaration in defendant's letter, that he would receive no more, unless sent as per agreement, and that he would claim a deduction for the inferior quality of the wheat received, is decisive of his liability for the value of the amount already delivered.

4. Where a plaintiff is entitled to recover on a *quantum meruit* or *quantum valebat*, on a contract not entirely performed, the defendant may set off the damages arising from the non-performance of the contract, if it be not rescinded by the parties.

ERROR to the Court of Common Pleas of *Cumberland county*.

The plaintiffs below and defendant, entered into written agreements for the sale and purchase of one thousand bushels of wheat, as follows:

" Bought of A. & R. Noble, one thousand bushels of wheat, to be good and merchantable, at ninety cents per bushel, which they promise to deliver to me, the undersigned, at my mill, in the month of October next, or sooner, if convenient. Received ten dollars on account of the purchase-money.

" Signed,                               M. JAMES."

By plaintiffs:

" Bought of Robert Noble, one thousand bushels of wheat, to be good and merchantable, at ninety cents per bushel, which I promise to deliver to M. James at his mill, and to be delivered in the month of October next, or sooner, if convenient. Received ten dollars on account of the purchase-money.

" Carlisle, Sept. 1, 1852.                     A. & R. NOBLE."

In pursuance of this agreement, the plaintiffs delivered to defendant, as per receipts, viz.:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Receipts on the | 7th October, 1852, for | | | 89 | bushels | 50 | lbs. | wheat, | | |
| " | " | 11th | " | " | 103 | " | 38 | " | " | |
| " | " | 14th | " | " | 98 | " | 44 | " | " | |
| " | " | 16th | " | " | 66 | " | 45 | " | " | |
| " | " | " | " | " | 88 | " | 34 | " | " | |
| " | " | 18th | " | " | 96 | " | 38 | " | " | |
| | | | | | | | | | | |
| Being in the aggregate, | . | . | . | 544 | " | 9 | " | " | | |

which James alleged to be inferior in quality to that contracted for, and wrote to them a letter, as follows:

"GENTLEMEN—I hereby give notice that I shall receive no more wheat on our contract, unless you send as per agreement; the greater portion of all I have received is very inferior, on which I shall claim a deduction; none of it holds out.

"Yours respectfully,        M. JAMES.
"October 16, 1852."

This letter the Nobles construed into a recision of the contract,—delivered no more wheat under the agreement, and brought their action of debt as above stated, for the recovery of the price of five hundred and forty-four bushels and nine pounds.    On the first trial of it, the court below held, that the letter of October 16th, 1852, was not a recision of the contract, and it being entire, the plaintiffs were not entitled to recover. A writ of error was sued out, and this court being of opinion, that the quality of the wheat should have been left to the jury, and if they found it to have been of the quality contracted for, then the plaintiffs might regard the letter as a recision, and recover for the amount delivered; but if the quality of the wheat was not such as contracted for, then that letter in the language of the court, "was nothing more than a call for faithful performance."    The jury having found that the wheat delivered was not such as contracted for, and reduced the plaintiff's demand by their finding below their claim, the plaintiffs in error allege, is a virtual finding agreeably to the law, as settled by this court, that there was no recision of the contract of 1st September, 1852, for the delivery of one thousand bushels of wheat; and consequently the questions now presented by this record, are:

1. Can the plaintiffs below recover for that part of the wheat delivered, upon their amended declaration in a *quantum valebat* count?

2. The contract being entire, and agreeably to the decision of this court, and finding of the jury, that there was no recision of it, and no evidence in the cause, that the defendant below ever refused to receive any wheat sent to him, or to comply with his contract, can the plaintiffs below, and without the consent of the defendant, elect to annul their contract, and make their agreement the foundation of an action which he could not maintain under it?

The questions are raised on the following points put by defendants, and the answers of the court thereto.

1. That the plaintiffs are not entitled to recover in this action of debt, under the pleadings and evidence in the cause; but must declare on the special agreement, and assign their

[Noble *v.* James.]

reasons for not delivering the whole number of bushels contracted for, and recover in damages for the amount delivered by them.

2. The contract in evidence, and on which suit is brought, is what is termed in law an entire contract, and the plaintiffs, at their own option, could not elect to rescind it and recover from defendant, before the quantity contracted for was delivered.

3. The letter and notice of defendant, of the 16th October, 1852, was not such a refusal to receive the whole one thousand bushels contracted for, as authorized the plaintiffs to elect to rescind and recover the price of five hundred and forty-four bushels, nine pounds, delivered by them, as shown by the receipts in evidence.

4. There is no evidence in the cause, that defendant ever refused to receive any wheat sent to him by the plaintiffs, in pursuance of the contract, or that he refused to receive and pay for the thousand bushels, which were to be delivered in pursuance of the contract; and, in the absence of such proof, the plaintiffs cannot recover in this action.

5. If the jury believe that the wheat delivered was inferior in quality to that bargained for, the letter of the 16th October, 1852, was no recision of the contract, and the plaintiff is not entitled to recover.

To which the court gave the following answers :

"The defendant has presented various legal propositions which we are requested to answer. This case has been before the Supreme Court, and the law applicable to it decided there, and we answer the points presented in accordance with their opinion now before us, as we understand it.

1st point. We instruct you that the plaintiffs may recover on the pleadings and evidence in this case.

2d point. We instruct you that under the evidence in this case, the plaintiffs may recover the value of the wheat delivered, although they did not deliver the one thousand bushels called for by the written contract.

3d point. The letter referred to, was not a recision of the contract, should you be of opinion, that the wheat delivered was not good and merchantable ; yet, notwithstanding this, the plaintiffs can recover the value of the wheat delivered by them, deducting any damages sustained by the defendant, by reason of the non-delivery of the one thousand bushels.

4th point. Although there may be no such evidence, on the part of the plaintiffs, as is mentioned in this point, this will not defeat a recovery by plaintiffs.

5th point. Even if the wheat was inferior in quality to that bargained for, the plaintiffs may recover its value, deducting any damages sustained by defendant. Judge Lewis, in delivering

[Noble v. James.]

the opinion of the Supreme Court, says :—' The acceptance of the wheat, and the delivery of separate receipts for each load, specifying the number of bushels by weight, is strong evidence that the article corresponded in quality with that contracted for, and that circumstance, in connection with the declaration of the defendant's note of the 16th of October, 1852, that he would receive no more, unless sent as per agreement, and that he would claim a deduction for the inferior quality of what he had received, is decisive of his liability for the value of what had been delivered. Against this demand, he has a right to set off the damages, arising from the non-performance of the contract, if it be not rescinded by the parties.'

This we instruct you is conclusive of the plaintiffs' right to recover."

The errors assigned, are

1. The court erred in permitting the amended declaration to be filed.

2. In their answers to the jury to defendant's first, second, third, fourth and fifth points.

*Hepburn* and *Williamson*, for plaintiff in error.—The amendment to the declaration was objected to, on authority of *Diehl* v. *M'Glue*, 2 Rawle, 337. The contract being entire and not rescinded, nor performed in full, the plaintiffs are confined to an action upon it. *Harris* v. *Ligget*, 1 W. & S. 301.

The promise on part of the plaintiffs was entire, for the delivery of a *specific quantity* of wheat, and the stipulation on part of the defendant was also one and entire, for the payment of the amount of the specified quantity of wheat at a fixed price. The delivery of the *one thousand bushels* is as expressly within, and of the very essence of the stipulation of the plaintiffs, as words could make it ; and on the part of the defendant, the agreement that he "bought of A. & R. Noble, *one thousand bushels of wheat*, to be good and merchantable, at ninety cents per bushel," can mean neither more nor less, than that he obligated himself to pay them, on the delivery of the one thousand bushels, the sum that quantity of wheat would amount to, at the rate of ninety cents a bushel. Defendant *buying this quantity at ninety cents per bushel*, does not disjoin the contract, and subject him to an action *toties quoties*. It is adopted only as the mode of ascertaining the purchase-money of the one thousand bushels ; just as the buying one thousand acres of land at *ten dollars per acre*, would be the mode of ascertaining the amount of the purchase-money of the land contracted to be sold. The last clause of the memorandum of agreement, "received ten dollars on account of the purchase-money," is additional evidence of this. By the phrase "purchase-money," the parties clearly intended the

money that was to be paid by the defendant to the plaintiffs, for the purchase made by him of them; and this purchase was not of *one* but of *one thousand* bushels of wheat. The term "purchase-money," invariably means, in lexicography, and law, and common parlance, the money to be paid for anything bought. The wheat bought being a *specific quantity*, the money to be paid for it was an entire sum; and the *one was the consideration of the other*. The thing then to be done by one party to the contract, is the whole consideration of the thing to be done by the other party. In such case, the *party who sues*, makes the *entire act to be done by him* a condition *precedent*, to be *fully performed* to entitle him to maintain his action. In the language of Lord Loughborough, in *Duke of St. Albans* v. *Shore*, 1 H. Bla. 278, "Unless the plaintiff *has done all it was incumbent on him to do*, in order to create a performance by the defendant, he cannot maintain his action."

Performance must be averred by the *party suing*. *Large* v. *Cheshire*, 1 Ven. 147; *Morton* v. *Lamb*, 7 T. R. 125; *Callonel* v. *Briggs*, 1 Salk. 112; *Thorpe* v. *Thorpe*, Ib. 171; *Bank of Columbia* v. *Wagner*, 1 Pet. 455; 2 Kent, 5th ed. 509; *M'Millan* v. *M'Millan*, 2 Johns. 165; *Thorpe* v. *White*, 13 Id. 53; *M'Millan* v. *Vanderlip*, 12 Id. 166; *Read* v. *Moore*, 19 Id. 337; °17 Id. 72; *Faxon* v. *Mansfield*, 2 Mass. 147; *Stark* v. *Parker*, 2 Pick. 267; *Moses* v. *Stevens*, Ib. 334; *Glazebrook* v. *Woodson*, 8 T. R. 373; *Champlin* v. *Rowley*, 13 Wend. 258; 18 Id. 191; *Oxendale* v. *Wetherel*, 9 B. & C. 380; *M'Dowell* v. *Ingersoll*, 5 S. & R. 105; *Shaw* v. *The Turnpike Co.*, 2 Penn. 454; *Martin* v. *Schoenberger*, 8 W. & S. 367; *M'Clure* v. *M'Clure*, 1 Barr, 379; *Chambers* v. *James*, 4 Id. 43; *Campbell* v. *Gates*, 10 Id. 483.

To sanction the law as laid down by the court below, in their charge to the jury, would be to overturn this almost unbroken current of authority, and establish the dangerous doctrine, that a party to a contract may repudiate it at pleasure, without default in the other contracting party, and recover from him for the part delivered, in the face of their positive and express engagements.

*Watts* and *Todd*, for defendants in error.—As a general rule, an entire contract cannot be apportioned. This rule is relaxed, however, in the case of a contract for goods, or work and labor, and materials, in which the defendant, when sued for the price, may show the insufficiency of the goods, or incomplete performance of the work, although a specific sum were agreed upon. Chit. on Con. 744. So if a vendee receive and keep, after the time for completing the contract, one of several articles, bought together under one contract, he must pay for such article,

[Noble *v.* James.]

although he might have refused to take it; for such retention of a part of the goods sold, disaffirms the entirety of the contract. *Roberts* v. *Beatty*, 2 Penn. 63; and he is liable on a *quantum meruit*, for the value of such portion of the goods.   Chit. on Con. 446.

So, also, it is a general rule, that while the special contract remains unperformed, no action of *indebitatus assumpsit* can be brought for anything done under it; but there are exceptions to this rule, and in some cases a special contract not executed, may give rise to a claim in the nature of a *quantum meruit*, as when a special contract has been made for goods, and goods sent, not according to the contract, have been retained by the party, then a claim for the value on a *quantum valebat* may be supported. A new contract may be implied from the circumstances.   *Read* v. *Rann*, 10 B. & C. 439; *Beach* v. *Thomas*, 7 Bingh. 99.   In such case, the party cannot recover the remuneration stipulated for in the contract, because he has not done that which was to be the consideration for it; still, if the other party have derived any benefit from his labor, or materials, or goods, it would be unjust to allow him to retain that without paying anything.   The law, therefore, implies a promise on his part, to pay such a remuneration, as the benefit conferred upon him is reasonably worth, and to recover that *quantum* of remuneration, an action of *indebitatus assumpsit* is maintainable.   2 Smith's Leading Cases, 16; *Haywood* v. *Leonard*, 7 Pick. 184.

The case was purely a question of fact for the jury, and as their finding is a general one in damages, it is impossible to say that it was rendered on any other conclusion, than that the plaintiffs had furnished wheat of the kind contracted for.   This was the leading point in the cause, to the building up and strengthening of which, all the efforts of the plaintiffs were directed, and which they aver, was recognized and sustained by the jury.

The opinion of the court was delivered by

LEWIS, J.—It was held in *Shaw* v. *The Turnpike*, 2 Pa. R. 461, that "either party may waive any right introduced into, or provided by the contract, either expressly, or tacitly by acts or declarations fairly indicating a relinquishment of any provision or part of a provision; and without the performance of which, unless relinquished or waived, a recovery could not be had? Previous to the decision of *Boone* v. *Eyre*, 1 H. B. 273, *n.*, it seems to have been taken, that nothing less than entire performance of a mutual covenant would entitle the party to his action for the breach on the other side.   In that case, however, a more reasonable and just rule was adopted, by which a mutual or dependent covenant, *which goes but to a part of the consideration* on both sides, and whose breach may be compensated in

damages, is to be treated exactly as if it were separate and independent. In *Ligget* v. *Smith*, 3 W. 332, it was stated by the Chief Justice, that "this was distinctly the principle," decided in *Boone* v. *Eyre*, and "that it was established by a train of decisions both in this country and in England." As a general rule, it is undoubtedly true, that where a contract is entire, it is incumbent on the plaintiff to show a performance of all that was stipulated on their part to be performed, and on failure so to do, he is not entitled to recover anything. But there are exceptions to this rule, and one exception is, that where there has been a substantial and *bonâ fide* compliance on the part of the plaintiff with his contract, he shall not be precluded from a recovery of his compensation on account of some slight imperfection, for which the defendant may be compensated in damages. *Chambers* v. *Jaynes*, 4 Barr, 43; *Liggett* v. *Smith*, 3 Watts, 331; *Preston* v. *Finney*, 2 W. & S. 53; *Wilhelm* v. *Coal*, 2 Id. 26. The case of *Chambers* v. *Jaynes*, shows that this exception is not confined to a *defective* execution, but that it embraces cases of *deficient* or *partial execution*. That case was one in which the jury found, in their special verdict, that the plaintiff had omitted to perform a part of his contract. He was nevertheless, permitted to recover, the defendant being entitled to a deduction to the extent of the damages for the breach of the contract by the plaintiff. The case of *Poulton* v. *Lattimore*, 9 B. & C. 259; 17 Eng. C. L. 373, shows also, that although the warranty that the seed was "good new-growing seed," was given in evidence, as a defence to the action for the price, yet if the plaintiff had been able to prove that it was of *any value whatever*, the retention and sale of it by the defendant, would have entitled the plaintiff to recover *for its value*. Littledale, J., remarked, in that case, that "if an action be brought by the vendor for the price, the defendant may prove the breach of the warranty, either in *diminution* of damages, or in *answer to the action, if the goods be of no value.*" In *Hayward* v. *Leonard*, 7 Pick. 184, Chief Justice Parker, speaks of the different views entertained at different times on the question, how far a party may have remedy who has entered into a special contract to perform work for another, and to furnish materials, and the work is done, and materials furnished, but *not in the manner stipulated for in the contract*, so that he cannot recover the price agreed by an action on that contract, although the work and materials are of some value and benefit to the other contracting party. The Supreme Court of Massachusetts decided in that case, that the modern authority is in favor of the action on a *quantum meruit* for the work and labor done, and on a *quantum valebat* for the materials furnished; and that, upon the whole, it is conformable to justice, that *the party who*

*has the possession and enjoyment of the materials and labor of another, shall be held to pay for them, so as in all events he shall lose* nothing by the breach of contract." In *Preston* v. *Finney*, 2 W. & S. 55, it was held, that if the defendant went on under the contract, after the time stipulated for performance, paying money, receiving and using the articles contracted for, it was too late to object that they were not delivered within the time prescribed. The *time* of *performance* may be a circumstance quite as material as the *quality* of the *article* contracted for; and that neither goes to the *whole* consideration, may be inferred from the acceptance and use of the article delivered. There is certainly a great distinction between articles of personal property contracted for, and work and materials to be furnished in the erection of buildings on the land of the defendant. In the first case he is, in general, under no necessity whatever to accept of an article not furnished according to the contract, while in the latter, he is under coercion either to accept of the imperfect building, or lose the use of his real estate on which it is erected. But even in the latter case, it was held in *Liggett* v. *Smith*, that the use of the building as a warehouse was sufficient to show that the covenant for flushing in, or filling in all the openings in each corner of brick with mortar," went not to the whole consideration, but only to part of it, and that the plaintiff was entitled to recover his demand, less a sum sufficient to compensate his defective execution of the contract.

In the case before us, the acceptance of the wheat, and the delivery of separate receipts for each load, specifying the number of bushels by weight, was strong evidence that the article corresponded in quality with that contracted for; and that circumstance, in connection with the declaration in the defendant's note of the 16th of October, 1852, that he would receive no more, unless sent as per agreement, and that he would claim a deduction for the inferior quality of wheat he had received, is decisive of his liability for the value of what had been delivered. Against this demand he has a right to set off the damages arising from the non-performance of the contract, if it be not rescinded by the parties. If the plaintiff's wheat, so far as it had been delivered before the defendant's letter was written, was not of the quality required by the contract, that letter, instead of amounting to a recision, was nothing more than a call for faithful performance. If, on the contrary, the wheat previously delivered was such as the contract required, the refusal to receive any more was, under the circumstances, in substance, a refusal to comply with the contract, which amounted to a recision at the election of the plaintiff. In that aspect of the case, the latter may recover the value of the wheat delivered, without deduction for damages for not delivering the residue.

The quality of the wheat delivered should be left to the jury. This is in accordance with the lucid opinion of President WOOD-WARD, as affirmed by this court in *Campbell* v. *Gates*, 10 Barr, 483.

Judgment reversed and *venire de novo* awarded.